464 A.2d 402

## LEASING SERVICE CORPORATION

v.

### John W. BENSON, Jr., Appellant.

## LEASING SERVICE CORPORATION

v.

### John W. BENSON, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Feb. 1, 1983.

Filed July 29, 1983.

440

Dinah Bogart Engel, Philadelphia, for appellant.

Sheryl L. Auerbach, Philadelphia, for appellee.

Before WIEAND, McEWEN and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The consolidated appeals covered by this Opinion arise from two separate orders by the lower court, in but one aspect of highly complex litigation, in several courts, which has resulted from an initially uncomplicated business transaction between the parties. While the issues presented by the instant appeals do not require extensive analysis for resolution, an understanding of the legal posture of the case demands a lengthy recitation of the tortuous litigation history which has evolved.

The record shows that on March 23, 1977 a corporation named Fairchild Incorporated (hereinafter "Fairchild") entered into a written lease agreement whereby it agreed to lease certain mining equipment to Appalachian Pocahontas Coal Co., Inc. (hereinafter "Appalachian"). The rights of Fairchild in this lease were assigned, on or about the same date, to Leasing Service Corporation (hereinafter "LSC"), the Appellee in the instant appeals. In a separate document dated March 25, 1977, John W. Benson, the Appellant herein, signed an unconditional guarantee agreement, under which Benson agreed to personally guarantee the obligations of Appalachian, of which he was a major shareholder.

In October, 1978, after Appalachian defaulted in its payments under the lease, LSC exercised its contractual right to accelerate all of the rental payments due under the lease. Simultaneously LSC made a demand upon the Appellant Benson to pay the full balance due and other charges. After Appalachian's default, LSC repossessed from it all or substantially all of the mining equipment which was the subject of the Lease. On or about March 13, 1979, Appalachian filed a Chapter XI Petition with the United States Bankruptcy Court in West Virginia. On March 16, 1979, LSC confessed judgment in the Court of Common Pleas of Philadelphia County against Benson individually for an amount exceeding $413,000.00, based upon rights granted in the guarantee agreement Benson had signed.[1] The judgment was confessed by the filing of a Complaint in Confession of Judgment; counsel for LSC appeared as counsel for Appellant, pursuant to authority granted in the guaranty agreement.

On March 29, 1979, Benson filed a Petition to Strike and/or Open Judgment by Confession. On July 18, 1979, the Honorable VITO F. CANUSO entered an Order denying the Petition to Strike, and granted the parties time to offer depositions with regard to the Petition to Open the Judgment. Subsequently, on March 4, 1980, Judge CANUSO entered an Order denying the Appellant's Petition to Open, and on March 18, 1980, Judge CANUSO filed an Opinion setting forth the reasons for his actions. The Order of the lower court in this matter was made the subject of the appeal in the instant case denoted as No. 592 Philadelphia, 1980.

Pursuant to a request for relief from automatic stay filed by LSC, the Bankruptcy Court authorized it to proceed with a sale of the equipment formerly leased to Appalachian. The sale was scheduled for and conducted on October 17, 1980. LSC was the only bidder at the sale and purchased

---

1. The confession of judgment action was docketed in the lower court at No. 3774 March Term, 1979, and thus marked the commencement of the litigation now on appeal before this Court in the instant case.

all of the repossessed equipment for approximately $79,-000.00. Later during October, 1980, LSC and Benson entered into an agreement which provided that Benson would make certain payments to Leasing Service, but without waiving any of his rights with respect to the judgment which had been entered by confession. Further, the parties agreed that the judgment could be transferred to New Jersey.

Thereafter, LSC filed a claim against Appalachian in the bankruptcy court for the deficiency which resulted from the sale of the equipment at a lower price than the amount of Appalachian's outstanding debt to LSC. After holding hearings concerning the matter, the bankruptcy court determined that LSC had acted in a commercially unreasonable manner in the sale and disposition of the equipment, and held that LSC was barred from recovering any deficiency from Appalachian as a result. In essence, the court found that LSC had not given sufficient notice, and in other ways had acted to make it difficult to sell the equipment in a reasonably competitive auction atmosphere. The result of the action of the bankruptcy court was to leave Appalachian free of any further indebtedness to LSC. The latter appealed that decision to the Federal District Court in West Virginia.

On June 30, 1981 Benson's counsel demanded in writing that LSC mark the judgment against him satisfied of record.[2] On July 24, 1981, LSC filed a petition with the Court of Common Pleas of Philadelphia County, seeking to have Benson's satisfaction demand declared a nullity. On August 13, 1981 Benson responded by filing an answer and several counterpetitions. Based upon the bankruptcy court's order that Appalachian did not bear responsibility for any further payments to LSC because of the improprieties in the equipment sales transaction, Benson contended that his liability to LSC as a guarantor was likewise extinguished. Thus, Benson's various pleadings sought in the alternative the opening of the judgment against him, an

2. See 42 Pa.C.S.A. § 8104.

order that the judgment was satisfied, an order barring LSC from recovering additional amounts from him under the guarantee, and an order requiring LSC to refund the voluntary payments he had made after the auction sale. On March 4, 1982, after considering oral argument and the transcript of a deposition submitted by Benson, the Honorable LEONARD A. IVANOSKI granted LSC's petition to declare Benson's satisfaction demand a nullity. Judge IVANOSKI denied any relief on the counter-petitions filed by Benson. Benson thereupon filed the second appeal now pending before this court in the instant case, numbered 1041 Philadelphia, 1982.

On May 4, 1982, Benson initiated an action in the United States District Court for the Eastern District of Pennsylvania [3], in which he raised basically the same requests for relief as had previously been denied by the Philadelphia Court of Common Pleas. On May 28, 1982 LSC filed a motion to dismiss in the Federal District Court. On the day before oral argument was held before our court on the instant appeals, the Honorable CLARENCE C. NEWCOMER, of the United States District Court for the Eastern District of Pennsylvania, granted the motion filed by LSC and dismissed the complaint which had been filed by Benson. Judge NEWCOMER explained in his Memorandum Opinion that his ruling was based upon the doctrine of *res judicata,* as all of the matters upon which Benson had sought federal relief had been previously raised and decided in proceedings before the Court of Common Pleas of Philadelphia County.

Subsequent to the oral argument on the instant appeals, LSC filed an application with this Court for permission to expand the record. That request was granted to permit the introduction into the record of the Memorandum Order which was entered on March 28, 1983 by the Honorable JOHN T. COPENHAVER, JR., of the United States District Court for the Southern District of West Virginia, in the proceeding in which LSC appealed from the order of the

3. That case is docketed in the District Court at No. 82–1982.

bankruptcy court which had denied it the right to recover any deficiency from Appalachian in excess of the proceeds from the sale of the repossessed mining equipment. Judge COPENHAVER affirmed the bankruptcy court's finding that LSC had not properly conducted the sale. However, the District Court determined that the bankruptcy court had erred in holding that LSC would be precluded from recovering a deficiency judgment by reason of its failure to conduct the sale in a commercially reasonable manner. In analyzing the issue presented, the court reasoned that such conduct by a creditor should not automatically dictate an absolute bar to the recovery of additional monies from the debtor, where fraud or the like is not present in the sales transaction. Instead, the court determined that the proper rule would be one which creates a presumption that the value of the collateral is equal to the amount of the indebtedness. The creditor, in this case LSC, could present evidence in an attempt to overcome the presumption in order to recover a deficiency. Consequently, Judge COPENHAVER ordered that the action be remanded to the bankruptcy court for further proceedings for the purpose of determining whether LSC would be entitled to any deficiency judgment.

We have not been further advised of any other legal proceedings which have evolved between the parties up to the time of the preparation of this Opinion. Having described the significant litigation history, it is now appropriate that we review the particular and somewhat narrow issues presented to this Court on the two separate appeals.

The appeal at No. 592 Philadelphia, 1982 involves Appellant's challenge to the lower court's denial of his motion to strike or open the judgment entered against him. He raises four principal claims of error.

First, Benson contends that the judgment against him must be stricken on the ground that the amount of the judgment is based upon evidence outside the face of the judgment instrument, which in this case is the guarantee agreement. He relies upon the holding in the case of *Edward Bershad Co. v. Babe's Bar, Inc.*, 254 Pa.Super.

477, 386 A.2d 50 (1978) to support that position. It is apparent that there is no merit to this argument.

The case of *Edward Bershad Co. v. Babe's Bar, Inc.*, *supra,* may be said to have established a general rule that the amount due and owing must always be set forth as a part of the debt instrument, or be susceptible to calculation from information which the instrument itself contains. The decision did not limit the ruling to situations in which the prothonotary simply enters a judgment by confession, without the involvement of any attorney or the filing of a complaint in confession of judgment.[4] Rather, the holding also appeared applicable in confession proceedings involving the entry of an appearance by an attorney on behalf of the debtor and the filing of a complaint prior to the entry of an amicable judgment by confession.[5]

■ Unfortunately, the Appellant's reliance upon the *Bershad* holding provides no support for his claims, as that case has been overruled and clearly does not state the applicable law in these circumstances. See *Dameron v. Woods Restaurant, Inc.*, 305 Pa.Super. 346, 451 A.2d 681 (1982); *Evans v. Blimpie Base, Inc.*, 284 Pa.Super. 256, 425 A.2d 801 (1981). These decisions leave no question that a judgment by confession may properly be maintained, when the instrument authorizes it, by the filing of a Complaint, ·

4. See former Pa.R.C.P. 2951(a), which was effective in March, 1979, and provided:

"(a) Judgment by confession may be entered by the prothonotary, as authorized by the Act of February 24, 1806, P.L. 334, 4 Sm.L. 270, sec. 28, as amended, 12 P.S. § 739, without the agency of an attorney and without the filing of a complaint, declaration or confession, for the amount which may appear to be due from the face of the instrument. The judgment may include interest computable from the face of the instrument."

5. Former Pa.R.C.P. 2951(b), which was effective in March, 1979, in such circumstances provided:

"(b) An action which is not filed under the Act of February 24, 1806, P.L. 334, 4 Sm.L. 270, sec. 28, as amended, 12 P.S. § 739, shall be commenced by filing with the prothonotary a complaint substantially in form provided by Rule 2952. Even though the instrument is one on which judgment could be entered by the prothonotary under the Act of 1806, the plaintiff may commence the action by filing a complaint."

even if a computation of the amount may require reference to matters outside of the record.[6] Therefore, we reject the Appellant's initial claim of error.

■■■ The second contention for reversal is that the guarantee agreement lacked "clarity" and for that reason the motion to strike should have been granted. This argument is essentially a repetition of the points raised in the Appellant's initial claim, which we have already rejected. The Appellant here merely maintains that the prothonotary lacked sufficient and clear evidence to justify his entry of a judgment by confession. We must disagree for the reasons stated above. Moreover, we note the rule that to support a motion to strike, the alleged irregularity must appear on the face of the record. *Malakoff v. Zambar, Inc.*, 446 Pa. 503, 288 A.2d 819 (1972). There is no such indicia of error present on the record before us, and none has been brought to our attention by the Appellant. The lower court's denial of the motion to strike was proper.

In appeal No. 592 Philadelphia, 1980, the Appellant next offers two arguments in support of the contention that the lower court erred in denying his motion to open the judgment entered against him. First, he maintains that opening the judgment was proper because the terms of the guarantee agreement were modified prior to the entry of judgment. Second, he contends that a judgment entered by confession must be opened where the specific amount due and owing is in dispute.

■■■ Prior to addressing these issues, it is appropriate that we recognize the rules which govern our review of this aspect of the case. It is well-settled that a confessed judgment may be opened only where the petitioner acts promptly and presents evidence of a meritorious defense. *Kardos v. Morris*, 470 Pa. 337, 368 A.2d 657 (1977); *Walnut-Juniper Co. v. McKee, Berger & Mansueto*, 236 Pa.Super. 1, 344 A.2d 549 (1975). Pa.R.C.P. 2959(e) provides, in part, that: "If evidence is produced which in a jury trial

6. The form for such a complaint is provided in Pa.R.C.P. 2952.

would require the issues to be submitted to the jury the court shall open the judgment." It is also clear that the trial court's disposition of a petition is a matter of discretion, and it will not be overruled in the absence of a clear and manifest abuse of that discretion. *Pappas v. Stefan,* 451 Pa. 354, 304 A.2d 143 (1973).

We now address the Appellant's claim that the judgment should have been opened because of an alleged agreement between the parties to rescind or modify the lease agreement and payment terms associated therewith. The lower court concluded that Benson had presented no competent evidence to support this claim. The record shows that although the Appellant was granted leave by the court to take depositions in support of his petition, he did not offer his own or that of any Appalachian representative, instead choosing to depose two of LSC's officers.[7] Citing their testimony, in the light most favorable to himself, Appellant points out that a representative of Appalachian spoke to a representative of LSC about attempts to sell the mining machinery covered by the lease. Further, he asserts that it was confirmed in writing that an understanding was reached in November, 1978 whereby Appalachian would pay the Appellee $5,000.00 per month and be given time to attempt to sell the machines. This evidence certainly fell short of showing any agreement by the parties to modify the terms of the underlying lease or the Appellant's guarantee agreement. It was plainly not a manifest abuse of discretion for the lower court to find that this testimony did not support the argument that the parties intended to orally or otherwise rescind or modify their original lease agreement. That conclusion is buttressed by the recognition that the lease agreement specifically provided that it could not be modified "except in writing". Our law generally upholds the validity and sanctity of no-oral

7. We cannot consider the transcript of a deposition of Federal court testimony of John H. McMann, III, the President of Appalachian, which was included in Appellant's printed record on this appeal. It is apparent that it was not timely or properly submitted as part of the record in the lower court.

modification clauses. See *C.I.T. Corporation v. Jonnet,* 419 Pa. 435, 214 A.2d 620 (1965). In that case it is noted that there are limited circumstances where a valid oral modification of a contract may be found, despite the existence of a no oral modification clause, but only where there is evidence of a waiver of the requirement that modifications be written to be effective. There is no such evidence here.[8] In fact, the confirmation in writing of the conversation upon which the Appellant relies includes this handwritten caveat by the president of Appalachian in his letter to the LSC representative: "Enclosed please find our check in the amount of $5,000.00. It is my understanding that you will not cash this check *until Mr. Mehl and our attorney Morris Dean have formalized an agreement reflecting our understanding.*" No evidence was presented by Appellant that any such "formalized" agreement was subsequently made by the LSC and Appalachian representatives. In light of all of these factors, we can discern no error in the lower court's finding that the Appellant failed to carry his burden of proof to justify opening the judgment, based upon allegations of a purported agreement among the parties to rescind or modify the lease agreement.

██ We next address the Appellant's final argument in Appeal No. 952, that the judgment should have been opened because the amount of the judgment is in dispute. As might be expected, Benson asserts that it is excessive. In that regard, he declares that the judgment amount fails to fully credit him with payments made on account, and improperly included charges for the rental period after the equipment was repossessed. The lower court's Opinion merely indicated its conclusion that the amount of the judgment was proper and reflected that full or more than full credit was given to Appellant for prior payments made. The Appellee contends in its brief to our Court that this

8. See also the recent decision of this Court in *Stern v. Feathers,* 307 Pa.Super. 433, 453 A.2d 661 (1982), which discusses the heavy burden upon one who seeks to prove an oral modification of a written agreement. The Appellant has clearly failed to carry that burden in the instant case.

claim was never properly raised in the lower court and was therefore waived. The record shows that as part of his original Petition to Strike and/or Open Judgment, the Appellant maintained, in paragraph number 38: "By confessing judgment in the sum of Four Hundred Twenty-Eight Thousand Fifty-Four Dollars and Forty-Six Cents, [LSC] has failed to credit [Benson] with Thirty-Eight Thousand Dollars ($38,000.00) in payments made to [LSC] since November, 1978." That contention is very specific in addressing a complaint as to the amount of the judgment, and it was obviously raised at an appropriate stage of proceedings in the lower court. A petition to open is the proper procedural tool for a confession judgment debtor to utilize to contest the amount of the judgment. See *Evans v. Blimpie Base, Inc., supra; Gratz Brothers v. Margolis,* 186 Pa.Super. 268, 142 A.2d 375 (1958). The record shows that the Appellant, at a later stage of proceedings, filed a "Supplemental Petition to Open Judgment" without obtaining approval of the Court. In its opinion, the lower court found that this second petition did not comply with the requirements of Pa.R.C.P. 2959(a) and (c), and refused to consider the arguments raised therein.[9] The lower court's action regarding the Appellant's Supplemental Petition was clearly justified, and limits our consideration to the question of whether the court erred as to the purported $38,000.00 payment not being credited to him in the judgment amount. The remaining claims, as to allegedly improper rental charges, and other matters included in the Supplemental Petition, were not properly raised in the lower court and therefore may not be considered by us on this appeal. Pa.R.C.P. 2959(a) and (c).

 With respect to the claim that the Appellant was not properly credited with payments made, we perceive no error

9. Pa.R.C.P. 2959(a) and (c), in effect at that time, respectively stated: "(a) Relief from a judgment by confession shall be sought by petition. All grounds for relief whether to strike off the judgment or to open it must be asserted in a single petition." "(c) A party waives all defenses and objections which he does not include in his petition or answer."

in the lower court's determination that Appellant was properly credited with all payments made. We have held that in testing the sufficiency of evidence offered in support of a petition to open, the facts alleged by the petitioner must be viewed in the light most favorable to him, and the lower court must accept as true all evidence and reasonable and proper inferences therefrom and reject adverse allegations of the party in whose favor the judgment was entered. *M.H. Davis Estate Oil Co., Inc. v. Sure Way Oil Co., Inc.*, 226 Pa.Super. 64, 403 A.2d 95 (1979). In the instant case, the Appellant asserts on appeal that he was credited with payments of $15,000.00, rather than $38,000.00, in the judgment amount. As discussed above, his only evidence in support of his Petition to Open was the deposition testimony of two LSC representatives. One of those representatives testified that the payments in question totaled $15,-000.00, and not $38,000.00, as asserted by Appellant. The Appellant has not directed our attention to any other evidence of record to support his assertions that the higher amount of payments were made. Thus, even considering the evidence in the light most favorable to Appellant, we can perceive no support for his assertion that the lower court should have opened the judgment because the record suggested it was entered for an excessive amount. Accordingly, we find no merit in the final contention of error offered by Benson on Appeal No. 592 Philadelphia, 1980.

Appeal No. 1041 Philadelphia, 1982 arises from the proceedings and court rulings which followed the Appellant's written request, pursuant to 42 Pa.C.S.A. § 8104, to have the judgment against him marked as satisfied. As related earlier, the lower court granted the Appellee's request to have the satisfaction demand declared a nullity, and denied the Appellant's counter-petitions for satisfaction of the judgment, for relief from judgment, and for restitution. Judge IVANOSKI initially noted that the satisfaction demand and related disputes covered by the petition and counter-petitions were based upon the determination by the bankruptcy court that the obligation underlying the guaran-

tee of Benson had been discharged in full because of the misconduct of LSC, a ruling which was not made until after the Petition to Open had been denied by Judge CANUSO, and the appeal filed with our Court at No. 592 Philadelphia, 1980. He concluded that the issues involved in the petition and counter-petitions, concerning the satisfaction of the judgment and other matters, with one exception, were not "in dispute" in the appeal at No. 592, and consequently could be decided by his court. He found merit in the Appellee's petition to have the satisfaction demand declared a nullity, based upon his conclusion that applicable law mandated that an unconditional guarantor, like Benson, not be released or discharged as the result of a release of the obligation of the principal debtor in the circumstances presented in this case. Judge IVANOSKI's order was dated March 4, 1982. As to the Appellant's counter-petitions for satisfaction, relief from judgment and restitution, Judge IVANOSKI issued an order denying them without prejudice. He determined that his court was precluded from considering these requests because of their relationship with the appeal then pending in our Court at No. 592 Philadelphia, 1980. Judge IVANOSKI did not issue any decision on the Appellant's counter-petition to open judgment, which alleged newly discovered facts, relating to the misconduct of LSC in the sale of the equipment. Rather, he referred this aspect of the case to Judge CANUSO, who issued an order dated March 17, 1982, dismissing the petition because of the pendency of the appeal at No. 592 before our Court. While the Appellant refers to it in his brief on this appeal, the March 17, 1982 Order by Judge CANUSO was never made the subject of an appeal to our Court. Thus, the only lower court order properly before us in Appeal No. 1041 Philadelphia, 1982 is the one which was taken from Judge IVANOSKI's March 4, 1982 order, granting the Appellee's request to declare Appellant's satisfaction demand a nullity, and denying the Appellant's counter-petitions for the satisfaction of judgment, for relief from judgment and for restitution.

We believe that Judge IVANOSKI was correct in his decision to have the satisfaction demand declared a nullity, but not on the grounds relied upon by the lower court. We believe the lower court should not have evaluated the merits of the dispute, but rather should have acted upon procedural grounds mandated by Rule 1701 of the Rules of Appellate Procedure.

Rule 1701 provides, in pertinent parts:

"(a) General rule. Except as otherwise precribed by these rules, after an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasijudicial order is sought, the lower court or other government unit may no longer proceed further in the matter.

"(b) Authority of lower court or agency after appeal. After an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasijudicial order is sought, the lower court or other government unit may:

(1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

*　　*　　*　　*　　*　　*

"(c) Limited to matters in dispute. Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the lower court or other government unit from proceeding further with only such item, claim or assessment, unless otherwise ordered by the lower court or other government unit or by the appellate court or a judge

thereof as necessary to preserve the rights of the appellant."

We find that the specific provisions of Rule 1701 precluded the lower court from reaching the merits of the Appellant's claims, and supported the order declaring the satisfaction demand a nullity. At the time Appellant made his demand, pursuant to 42 Pa.C.S.A. § 8104, for the satisfaction of the judgment against him, our appellate Court had jurisdiction of his appeal, which *inter alia*, challenged both the very validity of the judgment and the amount of it. Appellant's Petition to Open and/or Strike the Judgment, then pending before this Court on appeal, was a full-force attack on all meaningful aspects of the same judgment he then attempted to have marked satisfied. Under Rule 1701(b) it was proper for the lower court to order his satisfaction demand nullified "to preserve the status quo". We do not believe that Rule 1701(a) permitted the lower court to examine the merits and to declare whether or not the Appellant still bears liability on the judgment, despite the fact that the bankruptcy court announced its decision after the attack on the judgment had been appealed to our Court at No. 592. In doing so, the lower court clearly delved into the merits of an issue which directly affected a matter then on appeal before our Court. The reasons for the rule are self-evident. One need only realize that had the record presented other facts in this case, we might have been convinced to order the judgment stricken for some defect, or opened for evidence on the amount due from the Appellant. While such results have not eventuated here, the example demonstrates the problems which could be created by the lower court's resolution of the question of the exact amount owed by the Appellant to the Appellee. It is well-settled however, that the judgment of a trial court may be affirmed on appeal where it is correct on any legal ground or theory, regardless of the reason or theory adopted by the trial court. *Commonwealth v. Whitehouse*, 222 Pa.Super. 127, 292 A.2d 469 (1972). We find no basis

for reversal in the appeal filed at No. 1041 Philadelphia, 1982.

The Appellant did not file any appeal from Judge CANUSO's March 17, 1982 order denying the petition to open which asserted newly discovered facts. Further, he has not requested that our Court remand this matter to the lower court based upon newly discovered facts or the circumstances evolving from other litigation. It would not be appropriate for us to instruct the Appellant or even the Appellee as to future proceedings which might be appropriate in the unusual circumstances presented here. Moreover, the litigation quagmire in which this dispute has become mired does not create compelling circumstances for giving guidance to future litigants in other less procedurally complicated matters. Rather, we deem it appropriate to merely affirm the orders of the lower court in both appeals, for the reasons explained above.

Affirmed.